18-1880-cr
United States v. Carletto Allen

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 21st day of December, two thousand twenty.

Present:     ROSEMARY S. POOLER,
             RICHARD C. WESLEY,
             SUSAN L. CARNEY,
                  *Circuit Judges*,

_____

UNITED STATES OF AMERICA,

                  *Appellee*,

          v.                                                    18-1880-cr

CARLETTO ALLEN, AKA JOKER,

                  *Defendant-Appellant*.[1]

_____

Appearing for Appellant:     Randall D. Unger, Bayside, N.Y.

Appearing for Appellee:      Jessica Feinstein, Assistant United States Attorney (Allison Nichols, Karl Metzner, Drew Skinner, Hagan Scotten, Assistant United States Attorneys, *on the brief*) *for* Audrey Strauss, Acting United States Attorney for the Southern District of New York.

Appeal from the United States District Court for the Southern District of New York (Nathan, *J.*).

_____

[1] The Clerk of Court is directed to amend the caption to the above.

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment be and it hereby is **AFFIRMED**.

Defendant-Appellant Carletto Allen appeals from the June 20, 2018 judgment of conviction in the United States District Court for the Southern District of New York (Nathan, *J.*) following his conviction after a jury trial. The jury returned a verdict of guilty on four counts: racketeering conspiracy in violation of 18 U.S.C. § 1962(d); narcotics conspiracy in violation of 21 U.S.C. § 846; narcotics possession with intent to distribute in violation of 21 U.S.C. § 841; and a firearms offense in violation of 18 U.S.C. § 924(c). Allen was convicted of racketeering for his involvement with the Big Money Bosses "("BMB") gang. The district court sentenced Allen to concurrent terms of 36 months' imprisonment on the first three counts and 60 months' imprisonment on the fourth to run consecutively. The district court adjusted the sentence to account for Allen's state court sentence on relevant conduct, leaving a sentence of 72 months' imprisonment. We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

Allen principally argues on appeal that: (1) the evidence at trial was insufficient to support his racketeering conspiracy and firearms convictions; and (2) errors in the cross-examination during his testimony require a new trial.

We will uphold a jury verdict provided "a rational trier of fact could have found the defendant guilty beyond a reasonable doubt." *United States v. Persico*, 645 F.3d 85, 104 (2d Cir. 2011) (internal quotation marks and citation omitted). On a challenge to the sufficiency of the evidence, a defendant must demonstrate that, viewing all the evidence in the light most favorable to the government, "no rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." *United States v. McDermott*, 245 F.3d 133, 137 (2d Cir. 2001) (citations omitted). With respect to conspiracy convictions, "only slight evidence is required to link another defendant with a conspiracy once the conspiracy has been shown to exist." *United States v. Abelis*, 146 F.3d 73, 80 (2d Cir. 1998).

Allen argues that there was insufficient evidence that he knowingly associated with BMB or that his marijuana sales required their approval and agreement. We disagree. The trial record contains ample evidence from which a rational jury could conclude that Allen knowingly associated with, and conducted his drug sales in connection with, the BMB enterprise. A cooperating witness, Stephan Hamilton, testified Allen always sold marijuana to BMB members at a discount. Hamilton also testified that he personally received this discount based on his membership in BMB, and Allen shouted out "Mister Big Money" and called out "Big Money" during the first sale. Hamilton testified that he purchased marijuana from Allen frequently, and BMB would not have allowed Allen to conduct sales in that location absent authorization. Hamilton testified to Allen's additional sales in wholesale quantities to other BMB dealers and to Allen observing the BMB members repackaging the marijuana for resale. Hamilton testified that Allen promised he would not sell to BMB's rivals, YSGz, as he understood the rivalries. Hamilton testified regarding a jailhouse conversation where Allen explicitly associated himself with BMB, wishing he could have been present during their acts of violence United States v. Truman, 688 F.3d 129, 144 (2d Cir. 2012).

2

Allen attacks the credibility of Hamilton's testimony based on Hamilton's alleged history of dishonesty, convictions, and his cooperation agreement. All of these issues were addressed through cross examination, and we defer to the jury's determinations as to witness credibility. *See United States v. Morrison*, 153 F.3d 34, 49 (2d Cir.1998) (We defer to the jury's determination of the weight of the evidence and the credibility of the witnesses, and to the jury's choice of the competing inferences that can be drawn from the evidence."). The record more than supports the jury's conclusion that Allen possessed knowledge of the general contours of the racketeering conspiracy. *See United States v. Applins*, 637 F.3d 59, 77 (2d Cir. 2011).

Allen also argues that there was insufficient evidence to sustain his conviction under Section 924(c), which provides that "any person who, during and in relation to any . . . drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall . . . be sentenced to a term of imprisonment of not less than 5 years." 18 U.S.C. § 924(c)(1)(A)(i). "[A] drug dealer may be punished under § 924(c)(1)(A) where the charged weapon is readily accessible to protect drugs, drug proceeds, or the drug dealer himself." *United States v. Snow*, 462 F.3d 55, 62–63 (2d Cir. 2006).

Viewing the evidence in the light most favorable to the government, Allen had the weapon readily accessible during a drug sale just before his arrest. Allen testified that he sold an associate "nickel bags of weed" and stayed with him to smoke just before his arrest. The arresting officer testified that after he saw Allen smoking a marijuana cigarette and opened the car door to grab Allen's hand, he saw the handle of the gun. If credited, this testimony would allow the jury to rationally conclude that Allen kept the gun readily accessible to protect himself during a drug sale. Additionally, Hamilton testified that Allen told him that, after someone robbed Allen, Allen shot at the robber, providing further support for the jury's verdict.

Allen also argues that the government's questions to him regarding whether the arresting officers lied warrant a new trial. He relies on *United States v. Richter*, 826 F.2d 206, 208 (2d Cir. 1987), where we held that "[p]rosecutorial cross-examination which compels a defendant to state that law enforcement officers lied in their testimony is improper." Here, during cross examination the government explicitly asked Allen if he was claiming that the arresting officer lied. The government followed up by asking Allen if he was claiming that the other officers at the scene were "willing to risk their careers to lie about where that gun came from." Allen did not object to these questions below. Where the error is not raised below, our review is for plain error. *United States v. Nouri*, 711 F.3d 129, 138 (2d Cir. 2013). "Under the plain-error rule, we may overturn a conviction by reason of an error not timely raised at trial only if the appellant demonstrates that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights; and (4) the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* (alteration in original) (internal quotation marks and citations omitted). The government acknowledges that the questions to Allen were improper. Thus, the first two factors are satisfied, but this error alone did not suffice to seriously undermine the fundamental fairness of the trial.

In *Richter*, the conviction was reversed after the government improperly elicited testimony that forced the defendant to testify a law enforcement agent was lying. *Richter*, 826 F.2d at 208. However, we noted, "[b]ecause the prosecutor in this case gave the defendant an

alternative of branding [the agent's] testimony as either a lie or a mistake and because no objection was taken by defense counsel, we might be inclined to overlook the impropriety if that were defendant's sole claim of error." *Id.* We emphasized that the government called a second agent as a rebuttal witness to testify that the first agent was truthful and then used the summation to repeatedly emphasize the point that the defendant's innocence depended on the jury finding that the agents were lying. *Id.* at 208-10. In subsequent cases, we declined to reverse convictions where the government's improper questions did not similarly taint the entirety of the trial proceedings. "[D]efendants invoking *Richter* have not succeeded in obtaining reversal of their convictions when the starkly offensive prosecutorial delinquencies in *Richter* were not replicated." *United States v. Gaind*, 31 F.3d 73, 77 (2d Cir. 1994) (collecting cases); see also *United States v. Truman*, 688 F.3d 129, 144 (2d Cir. 2012) (holding that a similar error "when viewed in the context of the entire trial [was] not so severe and significant as to deprive [the defendant] of a fair trial") (internal quotation marks and citation omitted). Here, the government did ask improper questions, but it did not attempt to rebut Allen's testimony with additional law enforcement testimony and did not rely on this questioning in summation. While the government's error was clear and affected Allen's substantial rights, because the improper questions did not permeate the trial proceedings, they did not undermine the fundamental fairness of Allen's trial.

We have considered the remainder of Allen's arguments and find them to be without merit. Accordingly, the judgment of the district court hereby is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

4